

THE INSCOICO GROUP

GIA #   24539-01

Execution Date: June 18, 2007

## INDEMNITY AGREEMENT

**Surety:** Developers Surety and Indemnity Company and/or Indemnity Company of California, as evidenced by one or more duly executed Bonds, or their assigns, or any other persons or entities which any of them may procure to act as surety or as co-surety on any Bond, or any other person or entity who executes a Bond at the request of any of them.

Surety's Address:   17780 Fitch
                    Irvine, CA 92614

**Indemnitor:** The parties enumerated below who have executed this Agreement or who have adopted or assumed this Agreement or the obligations of an Indemnitor hereunder, either expressly or by operation of law. One or more of the Indemnitors may also be a Principal as defined below.

**Principal:**   DKSL, LLC, a Hawaii Limited Liability Company

or any one of them or any combination of them, their successors or assigns, whether alone or in joint venture or partnership with others. The term "Principal" shall also include, without limitation, one or more Indemnitors, if a Bond is executed by Surety on behalf of such Indemnitors, and any other person, firm or entity whose names shall have been furnished to Surety by any of the Indemnitors, and accepted by Surety as a Principal pursuant to the terms of this Agreement.

**Obligation:** Any agreement executed, undertaking made, statutory or other duty assumed or liability incurred by Principal, the performance or discharge of which is guaranteed by Surety pursuant to a Bond.

**Guarantor:** Any guarantor of the obligations under this Agreement.

**Bond:** Any contract of suretyship, and any authorized extensions, renewals, modifications or substitutions thereof, undertaken by Surety for Principal, whether before or after the date of this Agreement (excluding, however, any bond(s) which is/are specifically within the scope of another indemnity agreement).

This Indemnity Agreement ("Agreement") is made as of the Execution Date set forth above by Principal and Indemnitor for the purpose of indemnifying Surety in connection with the Bond(s) described above.

NOW, THEREFORE, Principal and each separate Indemnitor, jointly and severally, agree as follows:

**1. INDEMNIFICATION.** In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of Principal, Principal and Indemnitor shall pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of Principal and shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal, whether or not Surety shall have paid any amount on account thereof, including, without limitation, the following:

  1.1   To pay to Surety an initial premium upon the execution of each Bond, computed in accordance with the rates then charged at the time such Bond is executed. To also pay all renewals, extensions and premium adjustments billed by Surety until satisfactory evidence of discharge of release shall be furnished to Surety. For Premium computed on the basis of contract price, regardless of amount of such bond, to pay Surety an additional premium or be entitled to receive from Surety, as the case may be, computed on the difference in contract price occurring in the progress or at completion of the project or operation for which the Bond is issued.

# EXHIBIT 1

1.2     Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to Principal's nonperformance of an Obligation or any other matter covered by a Bond.

1.3     Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.

1.4     Liability incurred or expenses paid in procuring or attempting to procure a release of liability under or exoneration of a Bond.

1.5     Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an Obligation or a Bond.

1.6     Liability incurred or demands, claims, damages or expenses caused by the failure of Principal or Indemnitor to perform or comply with any or all of the covenants and conditions of this Agreement, including, without limitation, the costs and expenses of Surety in connection with the enforcement of any of Principal's or Indemnitor's covenants and conditions contained herein or in connection with the exercise of any remedy of Surety hereunder.

1.7     The obligations of Principal and Indemnitor hereunder shall also include, at Surety's election, Exercisable by Surety by the delivery of written notice to Principal and/or Indemnitor, the obligation to defend at Principal's and/or Indemnitor's sole cost and expense, and with counsel acceptable to Surety, any suit, action or other proceeding initiated with respect to an Obligation or a Bond.

2. **EXERCISE OF RIGHTS BY SURETY.** In connection with the exercise of any of Surety's rights under this Agreement:

2.1     Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.

2.2     Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering and legal services.

2.3     Surety shall have the foregoing rights, irrespective of the fact that Principal and/or Indemnitor may have assumed, or offered to assume, the defense of Surety upon any such claim.

2.4     In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor.

2.5     Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and reasonable attorneys' fees incurred in such suit.

3. **RESERVE ACCOUNT.** If Surety shall establish a reserve account to cover any liability, claim asserted, suit or judgment under any Bond, the Indemnitor shall, immediately upon demand and whether or not Surety shall have made any payment therefor, deposit with Surety a sum of money equal to such reserve account and any increase thereof as collateral security on such Bond, and such sum and other money and property which shall have been or shall thereafter be pledged as collateral security on any such Bond shall be available, at the discretion of Surety, as collateral security on all Bonds coming within the scope of this Agreement or for any other indebtedness of Indemnitor or Principal to Surety. If Indemnitor shall fail, neglect or refuse to deposit with Surety the collateral demanded by Surety, Surety may seek a mandatory injunction to compel the deposit of such collateral together with any other remedy at law or in equity that Surety may have. Surety shall have the right to retain such collateral until Surety has received evidence satisfactory to Surety of Surety's complete discharge and exoneration from any claim or potential claim under all Bonds and until Surety has been fully reimbursed for any and all liability incurred or for claims, demands, damages, costs, loss, expense and attorneys' fees.

4. **FUNDS IN TRUST FOR SURETY.** Principal and Indemnitor and their respective successors, assigns, executors and administrators agree to hold all money and all other proceeds of the Obligation, however received, in trust for the benefit of Surety and to use such money and other proceeds for the purposes of performing the Obligation and for discharging the obligations under the Bond, and for no other purpose until the liability of the Surety under the Bond is completely exonerated.

5. **DEFAULT.** Principal and Indemnitor shall be in default hereunder upon the occurrence of any of the following:

   5.1 Any default in the performance of an Obligation by Principal or any declaration by any obligee of an Obligation that Principal is in default thereunder.

   5.2 The breach of this Agreement by Principal or Indemnitor.

   5.3 In the event that the Obligation, or any portion thereof, relates to development of real property or construction of improvements upon real property: (i) the failure of Principal to pay for labor and materials ordered for or used in connection with such development or construction of improvements, (ii) the diversion or non-use by Principal of loan funds, equity funds or materials intended by the lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform or discharge a specific Obligation; or (iii) the voluntary or involuntary cessation or suspension of work required to be performed by Principal in connection with the Obligation.

   5.4 Insolvency, assignment for the benefit of creditors, or voluntary or involuntary filing of any insolvency or bankruptcy proceedings by or against Principal, Indemnitor or any Guarantor.

   5.5 If Principal, Indemnitor or any Guarantor is an individual, the death, adjudication of mental incompetence, felony conviction, or disappearance of Principal, Indemnitor or any Guarantor.

   5.6 The failure of Principal, Indemnitor or any Guarantor to promptly furnish accurate, complete and up-to-date financial statements upon request of Surety or the furnishing of a financial statement by Principal, Indemnitor or any Guarantor which contains any material misstatement or misrepresentation.

   5.7 Any material adverse change in the financial condition of Principal, Indemnitor or any Guarantor.

   5.8 The filing of any suit or the commencement of any action or proceeding by a creditor or obligee of an Obligation against Principal, Indemnitor or any Guarantor in which Surety has been joined as a party or involves circumstances which are the basis of any claim made against Surety or any Bond.

   5.9 Any suspension, revocation or other material adverse change in the status of any license of Principal with any applicable licensing board or agency to perform or discharge the Obligation.

6. **REMEDIES UPON DEFAULT.** In the event of any default as described in Section 5 above, Surety in its sole and absolute discretion is hereby authorized by Principal and Indemnitor:

   6.1 To consent to any change in or alteration of the Obligation or in any and all plans and specifications relating thereto.

   6.2 To make or to guarantee advances or loans in connection with the Obligation without any obligation or responsibility as to the application thereof, it being expressly understood and agreed that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder for which Principal and/or Indemnitor is liable irrespective of the prospects for repayment thereof or the security therefor.

   6.3 In the event the Obligation, or any portion thereof, relates to development or construction of improvements upon real property: (i) to take possession of the work to be performed pursuant to all or any portion of the Obligation, and, at the expense of Principal and Indemnitor, to complete the performance required by the Obligation or to cause the same to be completed or to consent to the completion thereof, and to take any other action which Surety may deem appropriate in connection therewith; (ii) to take possession of Principal's and/or Indemnitor's equipment, materials, supplies, books and records at the site of the work or elsewhere, and to utilize the same for completion of the Obligation or for any purpose which Surety deems appropriate or necessary; and (iii) to have disbursed to Surety, in the name and stead of and as irrevocable attorney-in-fact of Principal and/or Indemnitor as provided in Section 12 below, any construction loan proceeds allocated towards the payment of the costs of such development or construction. If the subject work is being performed on real property owned by Principal or Indemnitor, then Surety shall also have the right to take possession of said real property. Surety's rights hereunder may be exercised either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court.

   6.4 In the event the Obligation, or any portion thereof, relates to the performance of a subdivision improvement agreement between Principal and a public entity under which one or more Bonds have been executed and delivered as improvement security, to revert to acreage the real property which is the subject of the subdivision improvement agreement.

6.5 To file suit to enforce the provisions of this Agreement.

6.6 To apply, as a matter of right and without notice to either Principal or Indemnitor, to any court having jurisdiction to appoint a receiver or receivers of the subject work and/or real property, as applicable, and Principal and Indemnitor hereby irrevocably consent to such appointment and waive notice of any application therefor.

6.7 The remedies specified above shall be in addition to any other remedies conferred upon Surety by this Agreement, by law or otherwise. Surety shall have the right to enforce one or more remedies conferred upon Surety, successively or concurrently, and the exercise of any one remedy shall not preclude the exercise of any other.

7. **ASSIGNMENT.** To secure the obligations of Principal and Indemnitor hereunder and any other indebtedness and liabilities of Principal or Indemnitor to Surety, Principal and Indemnitor hereby assign, transfer, pledge and convey to Surety, effective immediately upon and only in the event that there shall be an event of default hereunder, all rights in and to the Obligation and the documents, contracts or entitlements creating the Obligation, including, but without limitation, all right, title and interest in and to:

7.1 Any and all contracts or subcontracts let in connection therewith and any contractors' or subcontractors' surety bonds.

7.2 Any and all machinery, plant, equipment tools and materials which shall be upon the site or sites of the work or project which is the subject of the Obligation or elsewhere for the purposes of the Obligation, including all material ordered in connection with performance of any Obligation.

7.3 Any and all sums due or which may become due upon partial or full performance of the Obligation and all sums due or to become due on all other contracts, covenants and agreements whether bonded or unbonded, in which the Principal or Indemnitor has any interest, together with any notes, accounts receivable or chose in action related thereto.

7.4 Those rights and interests in any insurance policies applicable to any obligation arising hereunder.

7.5 Any and all undisbursed loan funds, deposits or interest reserve accounts to which the Principal or Indemnitor may be entitled, and any and all collateral for any undertakings given by Principal, Indemnitor or any Guarantor in connection with any Obligation.

8. **WAIVERS.** The Principal and Indemnitor hereby waive and agree not to assert:

8.1 Any defense that this Agreement was executed subsequent to the date of any Bond, it being expressly understood and agreed that the Indemnitor hereby admits and covenants that the Bond was executed by Surety pursuant to the request of the Indemnitor and in reliance on the promise of the Indemnitor to execute and to perform this Agreement.

8.2 Any right to claim that any property, including homesteads, is exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession in any action brought by Surety under the Agreement.

8.3 Any right to require Surety to proceed against Principal or Indemnitor or any other person firm or entity, or to proceed against or exhaust any security held by Surety at any time, or to pursue any other remedy in Surety's power. Without, in any way limiting the generality of the foregoing, if property of Indemnitor is hypothecated with property of Principal or of any other party, Indemnitor hereby waives any right to have the property of Principal or of such other party first applied towards the discharge of the obligations hereunder.

8.4 The defense of the Statute of Limitations in any action hereunder or for the collection of any claim or the performance of any obligation indemnified hereby.

8.5 Any defense based upon an election of remedies by Surety, against either of them or both (including, without limitation, election by Surety to exercise its right under the power of sale set forth in any deed of trust given as security for the performance of the obligations hereunder), which election may destroy or otherwise impair subrogation rights of Principal or Indemnitor or the right of Indemnitor to proceed against Principal or to realize upon any security (whether such destruction or impairment of subrogation results from the operation of anti-deficiency statutes or otherwise).

8.6 Any defense based upon any legal disability or other defense of Principal, any other Indemnitor or other person, or by reason of the cessation or limitation of the liability of Principal from any cause other than full payment of all sums payable under this Agreement.

8.7  Any defense based upon any lack of authority of the officers, directors, partners or agents acting or purporting to act on behalf of Principal or any principal of Principal or any defect in the formation of Principal or any principal of Principal.

8.8  Any defense based upon Surety's failure to disclose to Indemnitor any information concerning Principal's financial condition or any other circumstances bearing on Principal's ability to pay all sums payable under this Agreement.

8.9  Any defense based upon any statute or rule of law which provides that the obligations of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal.

8.10  Any defense based upon Surety's election, in any proceeding instituted under the Federal Bankruptcy Code, of the application of Section 1111(b)(2) of the Federal Bankruptcy Code of any successor statute.

8.11  Any right of subrogation, any right to enforce any remedy, which Surety may have against Principal, and any right to participate in, or benefit from, any security for the obligations hereunder held by Surety.

9. **AUTHORIZATION TO SURETY.** Principal and Indemnitor hereby authorize and expressly empower Surety, in the sole and absolute discretion of Surety, to do the following:

9.1  From time to time to make or to consent to any change in, or to issue any substitute for or renewal of, any Bond or any Obligation referred to in any Bond, and this Agreement shall apply to such substitute or changed Bond, Obligation or renewals thereof. Any such changes, substitutions or renewals may be made without giving notice to Indemnitor or obtaining Indemnitor's consent and without affecting the liability of Indemnitor hereunder.

9.2  If any Bond is given in any action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of execution of the Bond as the authorized representative of such party until Surety shall have been fully discharged from liability under the Bond.

9.3  To take such steps as Surety may deem necessary or proper to obtain release from liability under any Bond.

9.4  To enter Principal's and Indemnitor's place of business or the place of performance of any Obligation during customary business hours or, in case of emergency, at any time for the purpose of inspecting, reviewing and making copies of the books, records, accounts, job records, contracts and other documents deemed by Surety to be material to performance of any Obligation or to performance of any duty of Principal or Indemnitor hereunder.

10. **NOTICE.** Surety agrees to make a reasonable effort to give Principal and Indemnitors notice of any material information of which Surety has knowledge concerning or affecting the rights or liabilities under any Bond or any rights and liabilities hereunder. Such notice shall be given at the last address known to Surety for Principal. Further, the failure to give such notice shall in no way relieve Principal and Indemnitors, or any of them, of any liability, duty or obligation hereunder.

11. **LIABILITY UNAFFECTED.** The liability of Principal and Indemnitor hereunder shall not be affected by the failure of any party to sign any Bond nor by any claims that other indemnity or security was to have been obtained nor by the release of any indemnity or indemnitor, nor by the release, substitution or subordination of any collateral that may have been obtained. If any party signing this Agreement is not bound for any reason, all other signatories hereto shall be bound for the full amount of liability hereunder.

12. **POWER OF ATTORNEY.** Principal and Indemnitor each hereby irrevocably nominates, constitutes, appoints and designates Surety, or the designee of Surety, as its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by Principal or Indemnitor under this Agreement, and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, those related to the disbursement of loan proceeds or the commencement of proceedings referred to in Section 6 and the execution of instruments referred to in Section 7 above and the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of Obligation monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein for the full protection intended to be given to Surety under all other provisions of this Agreement. It is expressly understood and agreed that the foregoing power of attorney is coupled with the interest of Surety in receiving the indemnification of Principal and Indemnitor hereunder. Indemnitor hereby ratifies and affirms all acts and actions which shall be taken and done by Surety or its designee as such attorney in fact.

13. **TERMINATION OF INDEMNITOR LIABILITY.** Except with respect to any bond(s) which is/are specifically within the scope of another indemnity agreement, this Agreement is a continuing obligation of Indemnitor unless terminated as to future Bonds by written notice to Surety as hereinafter provided, and such termination by any Indemnitor shall in no way affect the obligation or liability of any

ID-1000 (Standard/National) 1/01                                                5

other Indemnitor who has not given such notice nor shall it affect the obligation or liability of Principal, which shall continue until Surety is exonerated from liability under any Bond and Surety has recovered all amounts owing from Principal hereunder. The liability of Indemnitor hereunder as to future Bonds shall not terminate by reason of the failure of the Surety to disclose facts known about the Principal, even though such facts materially increase the risk beyond that which the Indemnitor might intend to assume. The Indemnitor hereby waives notice of any such facts, whether or not the Surety may have reason to believe that such facts are unknown to the Indemnitor or whether the Surety may have had a reasonable opportunity to communicate such facts to the Indemnitor. In order to terminate liability as to any future Bond, the Indemnitor shall:

13.1   Give to Surety written notice of such termination by certified mail, return receipt requested, addressed to Surety at the Surety's Address, and

13.2   State in such notice the effective date, which date shall be not less than 30 days following receipt of such notice by the Surety, of the termination of the liability of such Indemnitor for any future Bond.

13.3   Following the effective date of such termination, such Indemnitor shall continue to be liable hereunder for: (i) any Bond executed or authorized prior to such effective date of termination, and any renewals, substitutions, extensions and modifications thereof; (ii) any Bond executed pursuant to a bid or proposal Bond executed or authorized prior to such effective date of termination, and any renewals, substitutions, extensions and modifications thereof; and (iii) any maintenance or guarantee Bond executed incidental to any other Bond executed prior to such date of termination, and any renewals, substitutions and extensions thereof.

### 14. GENERAL PROVISIONS.

14.1   The obligations of Principal and Indemnitor hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the undersigned as causes of action may accrue hereunder. Indemnitor hereby expressly waives the benefit of any statute or rule of law which gives Indemnitor the right to require Surety to first proceed against Principal or which exonerates Indemnitor from any liability if Surety fails to first proceed against Principal.

14.2   Principal and Indemnitor shall, upon request of Surety, procure the discharge and exoneration of Surety under any Bond and from and against any and all liability by reason thereof.

14.3   Principal and Indemnitor hereby warrant that each Indemnitor is specifically and beneficially interested in obtaining each Bond. Additionally, Indemnitor acknowledges that Indemnitor's undertaking given hereunder is given in consideration of the execution or issuance of any Bond coming within the scope of this Agreement, and that Surety would not execute or issue any such Bond were it not for the execution and delivery of this Agreement by Indemnitor.

14.4   Indemnitor hereby waives notice of any default, the making of a claim against Surety or the loaning of funds to Principal by Surety

14.5   Principal and Indemnitor hereby agree to give Surety prompt notice of any facts which might give rise to any claims or suits against Surety upon any Bond.

14.6   Surety shall have the right, in its full and absolute discretion, to decline the execution of any Bond, including a final Bond when it has furnished a bid Bond.

14.7   Surety may consent to any changes or alterations in any Obligation, without affecting the liability hereunder of Principal or any Indemnitor.

14.8   Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration.

14.9   Until Surety shall have been furnished with conclusive evidence of the discharge and exoneration of Surety without loss from the Bond, and until Surety shall have been otherwise fully indemnified as hereunder provided, Surety shall have the right, of free access to the books, records, credit reports and accounts of Principal and Indemnitor for the purpose of examining and copying them. Principal and Indemnitor each hereby authorize third parties, including but not limited to, depositories of funds of Principal and Indemnitor, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information which it now or hereafter may acquire concerning Principal and Indemnitor to any other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms or entities as Surety may deem appropriate.

14.10   If the execution of this Agreement by Principal or Indemnitor is found to be defective or invalid for any reason, such defect or invalidity shall not affect the validity of this Agreement with respect to any other party. The invalidity of any provision of this Agreement by reason of the laws of any state or by any reason shall not affect the validity of any other provision of this Agreement.

14.11   Surety may, at its option, file or record this Agreement or any other document executed by Principal or Indemnitor individually or jointly, in connection with the application, issuance or execution of any Bond coming within the scope of this Agreement, including, without limitation, any notice of the prior interest in assignment of the same under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency. The filing or recording of any such document shall be solely at the option of Surety. The failure of such filing shall not release or discharge any of the obligations of Principal or Indemnitor under this Agreement. Principal and Indemnitor shall execute and deliver such additional documents as Surety may deem necessary or desirable to accomplish any such filing or recording.

14.12   This Agreement may not be changed or modified orally, but only by an instrument in writing, signed by Principal, Indemnitor and consented to by Surety.

14.13   Surety may maintain repeated actions to enforce the terms of this Agreement as causes of action accrue or as breaches of the same occur without any former action operating as a bar to any subsequent action.

14.14   Wherever used in this Agreement, the plural shall include the singular, the singular shall include the plural, and the neuter shall include both genders as the circumstances require.

14.15   It is understood and affirmed that Bonds are a credit relationship, and Principal and Indemnitor authorizes and empowers Surety, or any of Surety's authorized agents, to gather such credit information as Surety considers necessary and appropriate for purposes of evaluating whether such credit should be granted or continued.

14.16   Indemnitor has established adequate means of obtaining from sources other than Surety, on a continuing basis, financial and other information pertaining to Principal's financial condition and the status of Principal's performance of the Obligations with respect to each Bond covered hereby, and Indemnitor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Indemnitor's risks hereunder and Surety has made no representations with respect to such matters.

14.17   By exercising or failing to exercise any of its rights, options or elections hereunder, Surety shall not be deemed to have waived any breach or default on the part of either Principal or Indemnitor or to have released either Principal or Indemnitor from any of their obligations hereunder, unless such waiver or release is in writing and is signed by Surety. In addition, the waiver by Surety of any breach or default hereunder shall not be deemed to constitute a waiver of any succeeding or preexisting breach or default.

14.18   The obligations of Principal and Indemnitor hereunder shall be in addition to and shall not limit or in any way affect the obligations of Principal and/or Indemnitor under any other existing or future indemnities or guarantees unless said other indemnities or guarantees are expressly modified or revoked in writing.

14.19   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original hereof and all of which, taken together, shall constitute but one and the same instrument.

14.20   Any indebtedness of Principal now or hereafter held by Indemnitor is hereby subordinated to the indebtedness of Principal to Surety, and such indebtedness of Principal to Indemnitor shall, if Surety so requests, be collected, enforced and received by Indemnitor as trustee for Surety and be paid over to Surety on account of the indebtedness of Principal to Surety, but without reducing or limiting in any manner the liability of Indemnitor under the provisions of this agreement.

IN WITNESS WHEREOF, Principal and each Indemnitor, intending to be legally bound hereby, have executed this Agreement effective as of the Execution Date first above written.


**PRINCIPAL:**             **INDEMNITOR:**

DKSL, LLC, a Hawaii Limited Liability Company

By: *[signature]*
Daniel Kim, Member

By: *[signature]*
Steven Lee, Member

X *[signature]*
Daniel Kim, Individual

X *[signature]*
Julia Kim, Individual

X *[signature]*
Steven Lee, Individual

X *[signature]*
Patricia Lee, Individual

ALL SIGNATURES MUST BE ACKNOWLEDGED BY A NOTARY PUBLIC

STATE OF _Hawaii_
COUNTY OF _Honolulu_   ]

On _6/25/07_, before me, _Jinny Miranda_,
(here insert name and title of the officer), personally appeared _Daniel Kim_,
_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Jnny Mirnd_ (SEAL)
_my commission exp. 4/14/2011_

*[Notary Seal: JINNY MIRANDA, NOTARY PUBLIC, STATE OF HAWAII]*

This area for Official Notarial Seal

━━━━━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━━━━━

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

☑ INDIVIDUAL
☐ CORPORATE OFFICER
   _____
          TITLE(S)

☐ PARTNER(S)   ☐ LIMITED
               ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☑ OTHER: _Member_
   _____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
DKSL, LLC, a Hawaii Limited Liability Company

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OF TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

ID-1232 (REV 12/05)   **ALL-PURPOSE ACKNOWLEDGEMENT**

STATE OF _Hawaii_

COUNTY OF _Honolulu_    ]

On _6/25/07_, before me, _Jinny Miranda_____,
(here insert name and title of the officer), personally appeared _Steven Lee_____,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Jinny Miranda_ (SEAL)

my commission exp. 4/14/2001

[Seal: JINNY MIRANDA NOTARY PUBLIC STATE OF HAWAII]

*This area for Official Notarial Seal*

=========== OPTIONAL ===========

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

☑ INDIVIDUAL
☐ CORPORATE OFFICER
_____
TITLE(S)

☐ PARTNER(S)   ☐ LIMITED
               ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☑ OTHER: _Member_

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
DKSL, LLC, a Hawaii Limited Liability Company

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OF TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

ID-1232 (REV 12/05)    **ALL-PURPOSE ACKNOWLEDGEMENT**

STATE OF _Hawaii_
COUNTY OF _Honolulu_ ]

On _6/25/07_, before me, _Jinny Miranda_,
(here insert name and title of the officer), personally appeared _Julia Kim_
_____ ,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Jinny Miranda_ (SEAL)
my commission exp. 4/14/2011

[Notary Seal: JINNY MIRANDA, NOTARY PUBLIC, STATE OF HAWAII]

*This area for Official Notarial Seal*

═══════════════ **OPTIONAL** ═══════════════

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

| **CAPACITY CLAIMED BY SIGNER** | **DESCRIPTION OF ATTACHED DOCUMENT** |
|---|---|
| ☑ INDIVIDUAL | |
| ☐ CORPORATE OFFICER | |
| _____ TITLE(S) | _____ TITLE OF TYPE OF DOCUMENT |
| ☐ PARTNER(S)   ☐ LIMITED | |
|                ☐ GENERAL | |
| ☐ ATTORNEY-IN-FACT | _____ NUMBER OF PAGES |
| ☐ TRUSTEE(S) | |
| ☐ GUARDIAN/CONSERVATOR | |
| ☐ OTHER: _____ | _____ DATE OF DOCUMENT |
| SIGNER IS REPRESENTING: | |
| NAME OF PERSON(S) OR ENTITY(IES) | |
| _____ | _____ SIGNER(S) OTHER THAN NAMED ABOVE |

ID-1232 (REV 12/05)         **ALL-PURPOSE ACKNOWLEDGEMENT**

STATE OF __Hawaii__
COUNTY OF __Honolulu__  ]

On __6/25/07__, before me, __Jinny Miranda__,
(here insert name and title of the officer), personally appeared __Patricia Lee__
_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Jinny Miranda__ (SEAL)
my commission exp 4/14/2011

[Notary Seal: JINNY MIRANDA NOTARY PUBLIC STATE OF HAWAII]

*This area for Official Notarial Seal*

══════════════════ **OPTIONAL** ══════════════════

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

☑ INDIVIDUAL
☐ CORPORATE OFFICER
_____
TITLE(S)

☐ PARTNER(S)    ☐ LIMITED
                ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OF TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

ID-1232 (REV 12/05)          **ALL-PURPOSE ACKNOWLEDGEMENT**