IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>DKSL, LLC dba Paramount Builders; et al.,<br><br>　　　　　Defendants.<br><br>————————————————<br><br>AND RELATED THIRD-PARTY CLAIMS, COUNTERCLAIMS AND CROSSCLAIMS. | Civ. No. 17-00221 JMS-KSC<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 47 |

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 47

## I. INTRODUCTION

Defendant DKSL, LLC dba Paramount Builders ("DKSL") was the contractor on three construction projects that were not completed, or were cancelled, after problems arose related to DKSL's contractor's license. Plaintiff Developers Surety and Indemnity Company ("Developers" or "Plaintiff") issued surety bonds on those projects, with DKSL as the principal. DKSL, as well as co-

Defendants Steven Lee, Daniel Kim, Julia Kim, and Patricia Lee, individually (collectively, "Indemnitors" or "Defendants") agreed to indemnify Developers for claims made on those surety bonds. After Indemnitors failed to perform on the indemnity agreement, Developers brought this diversity action, and has now filed a Motion for Partial Summary Judgment, ECF No. 47, seeking to enforce the agreement.

Based on the following, Developers' Motion is GRANTED. Defendants are required to post collateral security in the amount of $260,000 in accordance with the "Reserve Account" provisions of the indemnity agreement. Developers, however, may not expend or disburse any of this security without further order from the court.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

Plaintiff's Motion is supported by a concise statement of facts ("CSF") filed pursuant to Local Rule 56.1. ECF No. 48. In response, DKSL, Steven Lee, Daniel Kim, and Julia Kim (joined by Patricia Lee, who is represented separately) forthrightly "do not dispute any of the facts proffered in Plaintiff's [CSF]," at least for purposes of this Motion. Defs.' Opp'n CSF at 3, ECF No. 62 at 3. They do, however, proffer evidence supporting additional facts for their

position that other "genuine issues exist that are necessary to be litigated," *id.*, arguing that it is premature to grant relief. Accordingly, the essential facts as proffered by Plaintiff are established, and are summarized as follows:

The Indemnitors executed a General Indemnity Agreement ("GIA") with Developers on June 18, 2007. Pl.'s CSF ¶ 6. Under the GIA, the Indemnitors agreed, among other matters, to indemnify Developers for claims or liabilities on surety bonds (performance or payment bonds) that Developers issued on behalf of DKSL as principal. Specifically, regarding indemnification, the GIA provides:

> I. INDEMNIFICATION. In consideration of the execution and delivery by Surety [Developers] of a Bond or any Bonds on behalf of Principal [DKSL], Principal and Indemnitor shall pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of Principal and **shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal**, whether or not Surety shall have paid any amount on account thereof[.]

GIA at 1, Compl. Ex. 1, ECF No. 1-1 (emphasis added). The GIA also has the following terms regarding a reserve account by Developers:

> 3. RESERVE ACCOUNT. If Surety shall establish a reserve account to cover any liability, claim asserted, suit

or judgment under any Bond, **the Indemnitor shall, immediately upon demand and whether or not Surety shall have made any payment therefor, deposit with Surety a sum of money equal to such reserve account and any increase thereof as collateral security on such Bond,** and such sum and other money and property which shall have been or shall thereafter be pledged as collateral security on any such Bond shall be available, at the discretion of Surety, as collateral security on all Bonds coming within the scope of this Agreement or for any other indebtedness of Indemnitor or Principal to Surety. **If Indemnitor shall fail, neglect or refuse to deposit with Surety the collateral demanded by Surety, Surety may seek a mandatory injunction to compel the deposit of such collateral together with any other remedy at law or in equity that Surety may have.** Surety shall have the right to retain such collateral until Surety has received evidence satisfactory to Surety of Surety's complete discharge and exoneration from any claim or potential claim under all Bonds and until Surety has been fully reimbursed for any and all liability incurred or for claims, demands, damages, costs, loss, expense and attorneys' fees.

*Id.* at 2 (emphases added).

Three surety bonds issued by Developers, with DKSL as the principal, are at issue in this action: (1) "the Ala Wai project," regarding improvements at Ala Wai Elementary School, with a bond amount of $266,430 (and with the State of Hawaii as obligee); (2) "the Kalakaua project," regarding improvements at Kalakaua Middle School, with a bond amount of $2,097,900 (and with the State of Hawaii as obligee); and (3) "the Kokea project," regarding improvements at a

Kokea Street maintenance facility building, with a bond amount of $733,000 (and with the City and County of Honolulu as obligee). Pl.'s CSF ¶¶ 7 to 9.

DKSL "has failed and/or has been unable to meet its obligations" for all three projects. *Id.* ¶ 13. The State of Hawaii, Department of Education ("DOE"), terminated the Ala Wai and Kalakaua projects by letters dated May 29, 2015. *Id.* ¶¶ 10 & 11. The termination letters both stated, among other things, that "[w]e have been made aware that effective October 1, 2014 DKSL LLC dba Paramount Builders contractor's license and RME Daniel Kim's license has been terminated," and that under Hawaii laws "any contractor engaged on a State of Hawaii public works project is required to have a current state of Hawaii contractor's license and be in good standing." Pl.'s Ex. 6 at 1, ECF No. 48-5; Pl.'s Ex. 7 at 1, ECF No. 48-6. Likewise, they both declared the surety bonds forfeited, stating, "If the work required to complete the remaining contract items are greater than what will remain, the Contractor and Surety will be liable for all expenses to complete the project. . . . The bond is hereby forfeited." Pl.'s Ex. 6 at 7; Pl.'s Ex. 7 at 2. Similarly, by letter to DKSL dated August 3, 2017, the City and County of Honolulu issued a notice of default and intent to terminate the Kokea project. Pl.'s CSF ¶ 12.

Developers has incurred actual expenses under its bonds and has set reserves for future expenses. Developers has paid claims and expenses on the Bonds totaling over $85,000 as of October 27, 2017. *Id.* ¶ 15. The evidence indicates that (1) on March 29, 2016, Developers paid $2,000 to the DOE to settle the outstanding bond claim for the Ala Wai project, (2) on May 12, 2016, Developers paid $17,329.00 to Ala Kai Mechanical Corporation, and (3) on January 23, 2015, Developers paid $12,021.31 to Ted's Wiring Service. Pl.'s Ex. 9, ECF No. 48-8; Svitenko Decl. ¶¶ 6 to 10, ECF No. 78-1; Pl.'s Exs. 13 & 14, ECF Nos. 78-2 & 78-3. Developers has also paid attorneys' fees and costs of over $49,000 (as of June 2017), apparently related only to the bond claims. Pl.'s Supp. CSF ¶¶ 25, 27, ECF No. 77; Svitenko Decl. ¶¶ 10, 11; Ogawa Supp. Decl. ¶ 6, ECF No. 78-6. It also paid a consultant $18,629.34 on January 10, 2018, for bond-related services, such as reviewing construction documents, attending site inspections, preparing scope-of-work documents, and securing and reviewing contractor proposals. Svitenko Decl. ¶ 13; Ogawa Supp. Decl. ¶ 7; Pl.'s Ex. 17, ECF No. 78-7.

Additionally, Developers has set reserves in the amount of $260,021.31 based on amounts already paid, as well as an estimate of $180,000 for future bond expenses. Pl.'s CSF ¶ 16; Svitenko Decl. ¶ 12. The $180,000 estimate

is based on proposals received to complete part of outstanding work on the

Kalakaua project ($60,045), estimates for further work after receiving information

from the DOE ($80,979), and additional attorney's fees and costs ($35,000 to

$40,000). Ogawa Supp. Decl. ¶¶ 8 to 12; Pl.'s Exs. 18, 19, & 21; ECF Nos. 78-8

to -10.

        On March 9, 2017, Developers formally demanded that Indemnitors,

jointly and severally, indemnify it under the indemnification provision of the GIA.

Pl.'s CSF ¶ 17. It also demanded, under the reserve account provision of the GIA,

that Indemnitors deposit security to protect it from any losses as a result of claims

regarding the Ala Wai, Kalakaua, and Kokea project bonds. *Id.* That demand

sought payment of $71,578.86 as reimbursement of actual expenses from

Indemnitor, and a deposit of $147,464.00 as collateral security under the reserve

account provision. Compl. Ex. 2 at 3, ECF No. 1-2. Developers later made similar

demands on June 27, 2017, seeking $81,611.82 as reimbursement for claims paid,

and a deposit of $180,000 as collateral security. Pl.'s Ex. 11 at 3, ECF No. 48-11.

        The parties also agree that (1) "Performance Bond claims on the

Kalakaua Project are pending in *Developers Surety and Indemnity Company v.*

*Department of Education, State of Hawaii et al.*, Civil No. 17-1-0532-03 (BIA),

First Circuit Court, State of Hawaii," Pl.'s CSF ¶ 20 (italics added), and (2) "Bond

claims on the Kalakaua Project and the Kokea Project are still pending and the

amount of [Developer's] total anticipated losses, costs and expenses are not yet

determined as litigation and claims are still pending," *id.* ¶ 21.

In short, "Defendants have not indemnified Developers and have

failed to deposit with Developers cash or other property as collateral security for

payment of claims on the Bonds."  *Id.* ¶ 19.

It is also undisputed that Steven Lee and Patricia Lee sold a residence

for approximately $2,000,000 in September 2015.  *Id.* ¶ 22.  And it is also

undisputed that DKSL has filed a breach of contract action in state court, seeking

recovery of $286,640.00 from the DOE.  Defs.' Opp'n CSF ¶¶ 6 & 7.  Defendants

have filed similar Third-Party Complaints against the DOE in the current action.

ECF Nos. 33-2 & 56.

## B.     Procedural History

Developers filed this action on May 17, 2017.  ECF No. 1.  The

Complaint asserts three causes of action against all Defendants:  Count One alleges

a "Breach of Contract of Indemnity," Count Two seeks relief for "Unjust

Enrichment," and Count Three seeks "Quia Timet" relief.[1]  *Id.* at 7, 10, 11.

---

[1]  "*Quia timet* is equitable relief which can compel the principal to pay the debt after it
has become due, but its use has also been extended to compel the principal to furnish the surety

(continued . . .)

DKSL and all Defendants besides Patricia Lee, filed their Answer on July 18, 2017, ECF No. 22, followed by Third-Party Complaints against (1) the DOE on August 1, 2017, ECF No. 27; and (2) Leeward Construction, LLC, on December 18, 2017, ECF No. 54. On August 11, 2017, Patricia Lee (represented separately from the other Defendants) filed an Answer, as well as a Third-Party Complaint against the DOE, and a Crossclaim against the other Defendants. ECF Nos. 33, 33-1 & 33-2.[2]

Developers filed its Motion on November 17, 2017. ECF No. 47. DKSL and all Defendants besides Patricia Lee, filed an Opposition on January 12, 2018, ECF No. 61, in which Patricia Lee substantively joined on January 16, 2018. ECF No. 63. Patricia Lee also filed a request under Federal Rule of Civil

---

(. . . continued)
indemnity against possible loss where the surety has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by conduct of the principal." *Selective Ins. Co. of Am. v. Kuan-Tsan Yu*, 2014 WL 12674384, at *3 (W.D. Wash. Nov. 21, 2014) (citing *Milwaukie Const. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966)). "*Quia Timet* is the right of a surety to demand that the principal place the surety in immediate funds when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." *Id.* (citing *Borey v. Nat'l Union Fire Ins. Co.*, 934 F. 2d 30 (2nd Cir. 1991)). "Bills quia timet are most often filed in surety cases, where a surety, after the debt for which he is liable has become due, seeks to compel the principal to pay the debt." *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1002 (N.D. Cal. 2010).

[2] Patricia Lee alleges in her crossclaim that she is divorced from Steven Lee, and that Steven Lee is obligated to indemnify her for any liability from the GIA under terms of their 2015 divorce decree. ECF No. 33-1 at 4. But this crossclaim would provide no defense to Developers' claim under the GIA, under which Patricia Lee is an Indemnitor.

Procedure 56(d) to continue the hearing, along with a Declaration from her counsel. ECF Nos. 63 & 63-1.[3] The DOE filed a Statement of No Opposition. ECF No. 60. Developers filed a Reply on January 22, 2018. ECF No. 67. The court heard the Motion on February 5, 2018.

After the hearing, on February 20, 2018, Developers filed (1) a Supplemental Memorandum, ECF No. 76, (2) an Amended Supplemental CSF, ECF No. 78, and (3) additional evidence to document its claims, ECF Nos. 78-1 to 78-10. And on February 27, 2018, Defendants (including a joinder by Patricia Lee) filed an Opposition to the Supplemental Memorandum, ECF Nos. 82-83.

///

///

---

[3] Although she seeks a continuance under Federal Rule of Civil Procedure 56(d), she does not identify any specific facts that would be sought by further discovery, nor indicate how additional discovery could create a genuine issue of material fact regarding liability under the GIA. She indicates only generally that she "has not had adequate opportunity to conduct discovery of the facts and circumstances at issue," and "requests the continuance in order to request written discovery from the other Defendants who were actually involved in the projects and have knowledge and documents regarding liability and damages in this matter that [she] does not have as an uninvolved guarantor." Carroll Decl. ¶¶ 3, 4, ECF No. 65. She does not explain why the discovery she seeks was not requested in the nine months since suit was filed. The court DENIES the Rule 56(d) continuance. *See, e.g.*, *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule 56[(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56[(d)] motion.").

# III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

## IV. <u>DISCUSSION</u>

### A. Defendants are in Breach of the GIA

Defendants admit that (1) they are parties to the GIA; (2) DKSL has "failed and/or has been unable to meet its obligations," Pl.'s CSF ¶ 13, for the Ala Wai, Kalakaua and Kokea projects; (3) Developers has paid claims and set reserves for pending and potential claims on the three projects; (4) Developers has made demands for performance on the GIA; and (5) they have not indemnified Developers and have failed to deposit cash or other property as collateral security under the terms of the GIA. Developers has thus established as a matter of law that Defendants are in breach of the GIA. *See, e.g.*, *Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012) (setting forth

elements of breach of contract under Hawaii law); *Travelers Cas. & Sur. Co of Am. v. Big Town Mech., LLC*, 2013 WL 5818601, at *3 (D. Nev. Oct. 8, 2013) (applying contract principles to indemnification and collateral security provisions of a GIA).

Given this breach, Developers seeks quia timet relief based on the reserve account (or "collateral security") provision of the GIA ("If Indemnitor shall fail, neglect or refuse to deposit with Surety the collateral demanded by Surety, Surety may seek a mandatory injunction to compel the deposit of such collateral[.]"), GIA at 2. Specifically, it seeks an order (1) enjoining Defendants from transferring assets to avoid satisfying their obligations under the GIA, and (2) requiring Defendants "jointly and severally to post collateral security in the amount of the reserves *and* to cover the payments already made as a result of claims" on the bonds. Pl.'s Mem. at 14-15, ECF 47-1 at 19-20 (emphasis added).

**B.    Developers is Entitled to Quia Timet Relief**

"When a surety agreement contains a collateral security provision, the surety is generally entitled to specific performance of the collateral security provision, regardless whether it has actually incurred a loss or only anticipates a loss[.]" *Allied World Specialty Ins. Co. v. JND Thomas Co.*, 2015 WL 9480626, at *5 (E.D. Cal. Dec. 29, 2015).

13

> A collateral security provision provides that once a surety . . . receives a demand on its bond, the indemnitor must provide the surety with funds which the surety is to hold in reserve. If the claim on the bond must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds to the indemnitor. Sureties are ordinarily entitled to specific performance of collateral security clauses.

*Id.* (quoting *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984)) (California law). *See also, e.g.*, *Berkley Reg'l Ins. Co. v. Murray*, 2016 WL 235191, at *5 (D. Md. Jan. 20, 2016) (granting specific performance to a surety where "there is no dispute that the Agreements are valid contracts requiring Defendants to continue to indemnify Plaintiff and post the requested collateral," reasoning in part that "[l]egal remedies are not sufficient because Plaintiff's 'obligation under the bonds are continuing, and the total loss to Plaintiff is not yet ascertainable'") (quoting *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 923 (E.D.N.Y. 1999) (brackets omitted)) (New York law).

Further, "[q]uia timet allows the surety to prevent the principal from dissipating . . . funds if the surety knows it will be called upon to 'pay the debt or perform the obligation' on the bond, suspects that the principal has some or all of the necessary funds to do so, and fears that the principal may abscond with those funds." *Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, 2015 WL 2449480, at *12 (D.

Haw. May 20, 2015) (quoting *Am. Contractors Indem., Co. v. Bigelow,* 2011 WL 5546052, at *10 (D. Ariz. Apr. 11, 2011)).

Here, the GIA plainly authorizes Developers to establish a reserve account "to cover any liability, claim asserted, suit or judgment under any Bond," and to require Indemnitors to deposit security with Developers, "whether or not [Developers] shall have made any payment." GIA at 2 ¶ 3. And the provision specifically authorizes Developers to "seek a mandatory injunction to compel the deposit of such collateral" if Indemnitor "shall fail, neglect or refuse to deposit" such collateral. *Id.*

The amounts demanded under these provisions — both the indemnification and reserve account clauses — must be reasonable. *See, e.g.*, *Star Ins. Co. v. Champion Constr. Servs. Corp.*, 2014 WL 4065093, at *4 (E.D.N.Y. July 30, 2014) ("[T]he surety is entitled to indemnification as long as the payments made in execution of the bonds were reasonable and made in good faith.") (applying New York law and citing cases); *id.* ("So long as the sum demanded is reasonable, the contractor . . . must abide by [the reserve account provision.]") (quoting *BIB Constr. Co. v. Fireman's Ins. Co.*, 625 N.Y.S.2d 550, 552 (N.Y. App. Div. 1995)) (square brackets omitted); *Yakima Co. v. Lincoln Gen. Ins. Co.*, 583 F. App'x 744, 746 (9th Cir. 2014) (mem.) ("While the GIA does not

expressly require that Lincoln's attorneys' fees be 'reasonable,' courts routinely imply such a limitation in contractual fee-shifting provisions — including those contained in indemnity agreements.") (citations omitted).  And "[a] demand for collateral is reasonable if the sum demanded is commensurate with the claims made against the surety or the amount sought by a third party in litigation." *Champion Constr. Servs. Corp.*, 2014 WL 4065093, at *4 (citations omitted).

Here, Developers has clearly established that in 2017 it paid $2,000 to the State of Hawaii, $17,329.00 to Ala Kai Mechanical Corp, $12,021.31 to Ted's Wiring Service, and over $49,000 in attorney's fees and costs (as of June 2017).  Pl.'s Exs. 9, 10, 13 to 16.  And recently, it also paid its consultant $18,629.34 for bond related services.  Pl.'s Ex. 17.  Further, it has submitted adequate evidence to establish the reasonableness of the $180,000 in reserves for future anticipated obligations, included proposed construction agreements, and consultant-reviewed itemized estimates.  Pl.'s Exs. 18 to 21.  The total reserve (slightly over $260,000) is commensurate with anticipated losses, and is reasonable.  Developers has also established that it made a proper demand for payment and that Defendants have failed to deposit collateral under the terms of the reserve account provision.

Finally, it is undisputed that Defendants have failed to perform for nearly a year (the first demand by Developers was made on March 9, 2017).[4]

Defendants' primary response is that it is premature and not necessary for Developers to require security, indicating that Developers will eventually be reimbursed from the DOE (which is a defendant in the state court litigation brought by Developers). But even assuming Developers eventually recovers amounts from DOE, Defendants do not dispute that they are presently in breach of the GIA. Granting relief to Developers would simply hold Defendants to their contractual obligations.

Accordingly, the court will enforce the injunction provision in the GIA. No later than March 14, 2018, Defendants must deposit collateral security in the amount of $260,000 in accordance with the GIA's reserve account provisions.

---

[4] Ordinarily the equitable remedy of specific performance is not available if there is an adequate remedy at law. In the context of a surety bond indemnity agreement, some courts have denied quia timet relief as to amounts already paid by a surety (granting relief as damages), and limited specific performance to collateral security for *future* losses. *See, e.g.*, *Hartford Fire Ins. Co. v. Universal Import, LLC*, 2009 WL 4042699, at *4 (D. Nev. Nov. 20, 2009) (refusing to specifically enforce a collateral security provision where the surety was able to recover money damages for breach of an indemnity clause) (citing *Commercial Ins. Co. of Newark v. Pac. Peru Constr.*, 558 F.2d 948, 954 (9th Cir. 1977)). This distinction, however, does not necessarily apply if the specific collateral security provision — such as the reserve account provision at issue here — does not distinguish "between losses already incurred and existing claims or future losses." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2010 WL 3928606, at *5 (E.D.N.Y. Oct. 4, 2010). Rather, here, "[l]egal remedies are not sufficient because Plaintiff's 'obligation under the bonds are continuing, and the total loss to Plaintiff is not yet ascertainable.'" *Berkley Reg'l Ins. Co.*, 2016 WL 235191, at *5 (quoting *U.S. Fidelity & Guar. Co.*, 62 F. Supp. 2d at 923).

And, given the amount of time (nearly a year) that has passed since Developers first demanded compliance, the court will further enjoin Defendants from transferring assets to avoid their obligations under the GIA. Under the reserve account provisions, once Defendants deposit such collateral security with Developers, Developers "shall have the right to retain such collateral until [it]] has received evidence satisfactory to [it] of [its] complete discharge and exoneration from any claim or potential claim under all Bonds and until [it] has been fully reimbursed for any and all liability incurred or for claims, demands, damages, costs, loss, expense and attorneys' fees." GIA at 2. In that regard, the court will require further court order before Developers may expend any of the collateral security. That is, Developers may not disburse or spend any of the collateral security without further order of the court.

///

///

///

///

///

///

///

# V. **CONCLUSION**

Developers' Motion for Partial Summary Judgment is GRANTED. As requested by Developers, Defendants are (1) enjoined from transferring any other assets to avoid satisfying their obligations under the GIA, and (2) required to post collateral security with Developers (to be clear, not with the court) by March 14, 2018 in the amount of $260,000, which is the amount sought as reserves on the bonds. Pl.'s Mem. at 14-15.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 6, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Developers Sur. & Indem. Co. v. DKSL, LLC et al.*, Civ. No. 17-00221 JMS-KSC, Order Granting Plaintiff's Motion For Partial Summary Judgment, ECF No. 47